Good morning, Your Honors. Eric Little, for Keating Dental Arts. May it please the Court. Paragraph 24 of Glidewell's complaint alleges, Defendant Keating's acts of false description, that's a key word, false description, have caused Plaintiff Glidewell irreparable injury, damage to its reputation, and pecuniary damage. The Keating advertisement to which this refers is Exhibit A to Glidewell's complaint, which states in pertinent part, quote, The best full contour zirconia solution available exclusively from Keating Dental Arts. Two key words there are the best and exclusively. It also says the best looking solid zirconia crown out there. So in other words, Glidewell alleged its reputation was damaged when Keating falsely described its dental crown as the best and available exclusively from Keating. Now the California Supreme Court... Another sentence I thought you were relying on. I'm sorry, Your Honor. I said I thought there was another sentence in that ad that you were relying on. Better looking than some crowns I've received from other labs? Yes. So in order to determine whether there's an implied disparagement claim, it boils down to a quote from Dr. Roy Davis talking about other labs and the phrase earlier on that this is the best zirconia solution available exclusively from Keating Dental Arts. Is that correct? Any other statements that you rely on? That's what we're relying on, Your Honor. Thank you. How many competitors are there in this field as a record show? Two. And it is in the record and it's also in Glidewell's complaint. So two competitors or two companies? Two companies, two competitors. Does that make a total of three or a total of two? A total of two, Your Honor. I'm sorry. There's a total of two, your company and the other company? And Glidewell, Your Honor. Yes. Those are the only two that manufactured this product? Yes, sir. Okay. Now this... I'd like to turn your attention to the policy itself. I want to make sure I track this correctly. The insuring agreement to start off provides coverage for certain events. Then we get to the exclusions. All right. The exclusion B, this insurance does not apply to personal and advertising injury, and then you go drop to seven, arising out of any violation of any intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark, or other designation of origin of authenticity. One last thing I want you to follow and then I want to ask my question. Personal and advertising injury, so it does not apply to personal or advertising injury arising out of under Clause 7, but we need to know what personal and advertising injury is. Fortunately, the policy defines it for us under the definitions, Part G, and it says under Clause 17, personal or advertising injury means injury arising out of one or more of the following offenses, one of which is D, oral, written, or electronic publication of material that, and this is important, disparages a person's or organization's goods, products, or services. So, why is it wrong? Why would it be wrong to give the common meaning to all of these words to say that the insurance is excluded for personal or advertising injury, which would include under Part D, disparagement of a trade name, trademark, trade secret, etc.? I mean, why isn't that the end of the case? Because that's not what the policy says, Your Honor. All right. The policy, it is really a two-step process, Your Honor. So the policy does not say what I've just quoted. It doesn't stand for your conclusion, Your Honor, which is, as I understand it. Then walk me through it, because I think it's important for me to understand this. It is a two-step process, Your Honor, insurance coverage. The first process is going through... The coverage for the underlying substantive violations, and then the others cover, defense, is that what you're going to argue? I'm sorry. Defense? I was going to say it's a two-part process. One, whether there's initial coverage, okay, so whether it falls within the offense of disparagement here, okay, and then if we meet that initial burden, that's my burden, okay, and the burden shifts to the insurance company to show that the exclusion applies conclusively through undisputed evidence in all possible worlds, okay. So what I understand, Your Honor, to be saying is you're taking a holistic approach, okay, that there's no... Well, I'm reading the policy. I mean, if you can call it holistic, if you wish, but... Yeah, that's not the approach under California law. It's a two-step process. First, you do coverage, and then you do exclusions, okay. So we get to meet initial coverage. We rely on the California Supreme Court's decision in Swift, okay, and the decision in Swift says, quote, a publication that claims a superior feature of a business or product as distinct from all competitors, such as a claim to be the only producer of a certain kind of software or the clearly or necessarily disparage another party even without express mention, okay. So that's how we meet the initial coverage. So it's really not the word best because under Swift, using words like this is the best product in this market or this is superior is fine, right, but it's... No, Your Honor, I think that the Swift decision says a publication that claims a superior feature can be disparagement, okay, and that's Swift at page 294. We meet the initial coverage under Swift and Swift doesn't address exclusions, but we do meet initial coverage because that paragraph says a superior feature of a publication. Okay, so our publication is that advertisement, okay. Advertisement is linked to the complaint because the complaint complains about false product that's distinct from all competitors. We have the best full-color zirconia solution available, okay. Under Swift, you have to distinguish between direct criticism of a competitor's product or business from other statements extolling the virtues or superiority of the defendant's product or business. I'm sorry, Your Honor, did you repeat that? I'm looking at the language of Swift now and specifically the requirements that they lay out that you must clearly derogate the product or business, right, either by express mention or clear implication. So what does that mean? Okay, what does that mean? An example the Swift court gave of that is a publication that claims a superior feature of a business or product is distinct from all other competitors, such as a claim that it's the only producer of a certain software. We're the only producer of the two, but we're claiming that. And that creates a disparagement. That creates a disparagement. But your problem is that in the exclusions, there is an exclusion for express exclusion for disparagement of a trademark. No, the exclusion is for personal or advertising injury arising out of, okay, arising out of a violation of trademark. So for that exclusion to apply in all possible worlds, okay, you know, through undisputed evidence, okay, if for that exclusion to apply, the disparagement here would have to solely arise out of trademark infringement. And that's not true. That is just factually not true. Okay. Well, if it doesn't arise out of a trademark infringement, what does it arise out of? It's separate. It doesn't have to arise out of anything. It is separate. It is separate and actionable. They're complaining about this ad. They're complaining about the trademark in the ad. They're complaining about us claiming that we're the best. Okay. And you know what? We know that it didn't. We know that in fact, it didn't arise out of trademark infringement because Judge Carter held that Keating did not of Glidewell. Okay. So the question is, you know, has Hartford proven in all possible worlds through undisputed evidence, Montrose, you know, it's always the standard, okay, that have they proven that the exclusion always applies? And they haven't. I have provided the court, both the district court and here, with a basis for coverage that doesn't require the If Judge Carter had found a trademark violation, then would it have arisen out of it? There's still, there's still, because, because we had a defense to the, because we had a defense to the trademark in the lower act, in the lower court. Okay. There's still, there always, even without that finding, okay, by Judge Carter, because we had a defense to trademark infringement. Okay. There was always, always the possibility that the exclusion would not apply. And remember, that's all I have to show. I don't have to show, I don't have the burden that Hartford has to show that under all possible worlds, undisputed evidence can conclusively establish. Okay. My burden is very light. I just have to prove initial coverage. Their burden, according to Montrose, is very heavy. Okay. They must prove that the exclusion applies in all possible worlds. Well, the insuring agreement says we will pay those sums. This is you, to meet your burden, you've got to get through this hoop. We will pay those sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury. Now that theoretically you're covered at that point, which is your argument, but there's another clause and it says to which this insurance applies. Mm-hmm. And the exclusion, then you'd have to read it. Well, let's go to the application first. The application says that the insurance applies to personal and advertising injury caused by an offense arising out of your business. So to which this insurance applies, I agree with your honor. It has to, there has to be shown a causal connection with our business. It has to arise out of our business. Okay. And you're saying, well, this is not arising necessarily out of trademark violation or disparagement. This is just arising out of our business and that somehow out of your business is broader than trademark in such a way that you slip through. It's not an either or. Okay. Arising out of your business is part of the coverage grant. We have to show an initial coverage and it hasn't really been contested that this arises out of our business so far, but I mean, it's, it does arise out of our business. It's our ad. Okay. It's our tooth. It arises out of our business. Okay. So now we're talking about an exclusion. Right. We're talking. It's read narrowly. Right. So the exclusion is that key exclusion. And then we're talking about arising out of, which is read broadly. But the exclusions are always interpreted narrowly. And the content of the exclusion is read broadly. Well, the words are broad. One of the problems with all these standards and all that, but there's a conflict in well, we read the provision narrowly, but we read the content of the provision broadly. So those are both principles that we're supposed to follow. If I, if I may suggest solution, your honor, this, the California Supreme court in partridge. Okay. Where you had guy driving down the road, the facts best to my recollection, and a gun discharges accidentally. Okay. So you got the auto insurance. Okay. And you got the, and you got, and you got the homeowner's insurance. Okay. It's very illustrative how you'd interpret arising out of in coverage grants as compared to as compared to exclusions. Okay. And if I, if I can, so the question is, you know, which, or do both policies apply? Okay. So if I, if I may quote as to the coverage grant, this is what the California Supreme court said, past cases have established beyond contention that this language arising out of when utilized in a coverage or insuring clause of insurance policy. Okay. Has broad and comprehensive application and affords coverage for injuries bearing almost any causal relation to the vehicle. Okay. So again, broad when you're talking about the coverage grant, but when you get to the exclusion, okay. The court says past authorities have made it abundantly clear that an entirely different rule of construction applies to exclusionary clauses as distinguished from coverage clauses. Okay. Whereas, and remember the exclusionary policy clause begins with arising out of, okay. Whereas coverage clauses are interpreted broadly. So as to afford the greatest possible protection to the insured exclusionary clauses are interpreted narrowly against the insurer. So even when there's an arising out of in that, in the, exclusionary clause, okay. Then it's, then the exclusion in itself is interpreted narrowly against the insurer. Okay. Fine. But even applying it narrowly. Yes. As narrow as you can get where I'm up in the air is on this language that says the exclusion applies to the trademark. And this trying to find a scenario under which the disparagement doesn't somehow involve the trademark. Well, and that's what's actually present here. Okay. The disparagement aspects of this case don't involve the trademark. Okay. The disparate, they don't say we disparage their trademark. Okay. Well, they don't have to say expressly. Well, no, it's they, they, they don't say that we disparage their trademark. We have the record. We do, you know, they say they talk about our false description and their complaint. And they say they're complaining about our ad that, you know, that, that says the best full color, full contour zirconia solution available exclusively from Keating Dental Arts. We know the California Supreme Court says those constitute disparagement. Okay. The question is, the question really in this case is, does the exclusion apply? And they don't, they can't and have not the burden that it applies in all possible words. You got a red light here. Good morning. My name is Rex. I'm here on behalf of the appellants, Hartford and the complaint that says the number of competitors in this market. And I think the ad that they rely on indicates that they're more than just these two companies by the reference to some crowns that I received from other labs. So you're saying it's not in the complaint, but it's in the record somewhere else. I don't believe it's in the record or the complaint. I could be mistaken, but I do not remember seeing that anywhere. Because the reference to other labs suggest that there's quite a few competitors in the marketplace. Right. I mean, I guess it's outside of the record, but if you go on Google this, you will find all sorts of ads for this product from all sorts of people. Let me go to the question of whether Swift applies. Mr. Little and I are very familiar with Swift because he argued it for the plaintiff and I argued it for Hartford. And this is Swift all over again. I think that it's important that the court look at the words in Swift that the California Supreme Court said were not enough to demonstrate a clear reference to the plaintiff in the underlying case. And what were those words? The words that the plaintiff relied on in the underlying case in Swift were unparalleled, innovated, unique, and superior. And the California Supreme Court said that's not enough. That if those kinds of words could be the basis for a disparagement claim, then any time someone was touting their product or their services, there would be a disparagement claim. And that would stop commercial speech, which is valuable to people in determining what they want to purchase, and would raise, as the Swift court said, serious First Amendment questions. So let's then look at the two words that the plaintiff here relies on. First, best. If superior is not actionable in this context, then surely best is not. And let's look at exclusive. And let's change the words in the ad a little bit so we're all more familiar with the product because I assume the introducing the all-new Camry, the best family car solution, available exclusively from Toyota. No one could possibly believe that what was being said was anything other than you can get a Camry from Toyota. It's not saying that we're the only car maker in the world. And that is confirmed by the rest of this ad and the references to some crowns, which plaintiffs leave out of their brief every time they quote this. They're plainly only referring to some crowns. They're not saying we make the only crown here. And that's what they have to turn exclusively into. They have to, under Swift, they have to say that Keating was accused of saying that it was the only person who made crowns like this. And there is nothing, I submit here, that meets that. This is Swift all over again where a defendant in the underlying suit touts its product as being superior or the best. And then the defendant wants to say, oh, well, that means I was accused of disparagement. And so please give me coverage. Under Swift, there simply isn't any coverage here because there isn't any disparagement claim here. And that, we submit, should be the end of the discussion. If you also look at the district court's decision, he said it was a very close question whether there was a disparagement claim. And that was before Swift. And the primary- Well, it's not, this isn't like Toyota and whatever else. It's a Bruxier and a Brux, a Bruxier and a Bruxier, is it? You don't think that has any- Well, Bruxier is the, the KDZ Bruxier is the trademark trade name of Keating's product, just like Camry is the name of a car that Toyota produces. It's not Keating's name. So all they're saying is introducing the all-new Bruxier KDZ, or it's the other way around, KDZ Bruxier, which is, this is the crown that we produce. And we say it's the best one. The other one was a Bruxier. Right. What, is there some meaning to Bruxier or Bruxier in this industry? Not that I'm aware of, but I just don't, I don't, I don't have any information on that. Yeah, it just happened to hit on a name that sounds exactly like the other one. Sounds similar. The difference, of course, being that Keating added the words KDZ, which I take it refers to it, Keating Dental. But in any event- It seems to me that might have something to do with this question of, you know, when you're talking, it's better than others. It's not as if the others, and the other thing that would have something to do with it would be how many competitors there are. I mean, if you put this in context, those are two things that to me would have some relevance to whether you're really talking about another particular competitor. Maybe so. But the fact of the matter is, as I said at the very beginning, I don't think that there's anything here in the record that defines the number of competitors. So if the plaintiff here wanted to make that argument, they needed to make that record. They can't come in here now and say, that's what the record is. In any event, our point is that if you read this aft, all it means is Keating produces this particular crown, the KDZ Bruxer, and you can get it exclusively from us and nothing more. And that is not under SWIFT, disparagement of somebody else's product. And like I said, we think that should be the end of this case. But turning to the question of the exclusion, that is, if there's disparagement here, our fallback position is that in any event, the exclusion applies. And the district court agreed with that, that the exclusion applied here. So why do we think the exclusion applies? Because the California courts, in considering IP exclusions, have made it crystal clear that the arising under language is not ambiguous, that it is clear, and have applied it in every case that they have seen involving this issue. Let's start with the allegations of the complaint. There are three causes of action, claims for relief. What's the first one? Trademark infringement. What's the second one? False designation of origin by using an infringing mark. And let me note here that the exclusion is not only an exclusion for trademark infringement, it's exclusion also for false designation. It says that. And what is the third claim? Under 17200. And what is the act? Infringing the plaintiff's trademark. This is a pure and simple trademark case, nothing else. That's all that was alleged in every cause of action, and each cause of action incorporated the cause of action that went before it. It's pure and simple trademark infringement. And the court doesn't really have to decide this issue about whether arising under is narrow, or whether it's broad, or just how you do that. The fact of the matter is, under any reading of the complaint, this is within the IP exclusion. Let me ask you, as I recall, if the pleadings tell you that some other action could be brought, if you're not limited to the insurance company isn't limited to what's actually pledged, it must cover anything that could be a cause of action based on the facts pledged in the complaint? Okay, let me tell you what my understanding of the law is. The insurance company cannot simply rely on the titles of the causes of action and say, okay, that's it. They titled this, we don't need to know anything else. The insurance company must look at the factual allegations of the complaint and see what causes of action those facts allege. Or might reasonably arise out of those facts. Fact pleading. Right. But the insurance company is not obliged to give coverage for a claim that was not pled, that the plaintiff might have thought up and pled. The insurance company doesn't have to guess because that would mean have to cover every single case. Because a plaintiff could plead a claim that had absolutely no merit. But if it was in fact pled all the elements of a disparagement claim, you'd have to give coverage. So it can't be the law that the fact that the plaintiff might think this up is the test. The test is, what are the facts? You can ignore the headings, or at least they're not controlling. But the plaintiff has never shown here that the facts pled in the complaint constitute disparagement. Well, that's a different thing. As you're back to the disparagement argument, the first argument. The second is whether it's arising out of, and we're on the second, is it arising out of a violation of the intellectual property rights? But there, every single cause of action says that the violation of the plaintiff's rights is using an infringing, confusing, similar trademark. That's what they all say. Every one of them. But this is a question, and I'd like your view of this. Let's assume they pled a disparagement case, and we're over that first point. And let's assume that this ad was a result, or it was connected to their alleged violation of the intellectual property, whatever it is. The ad was part of a campaign that constituted an intellectual property infringement. But the ad could have been, in itself, if it had just been run, could have formed a basis for a suit. And they didn't plead that violation independently. Would that be covered under California law? If the facts that they had pled in the complaint constituted disparagement, then yes. No, no. We assume that, because we're only talking about issue two now. Whether it arises out of. Then it depends on whether the facts they pled about disparagement are, in some way, different than the facts they pled about trademark infringement. Let's say they added a fourth cause of action. It pled exactly the same facts that are in the complaint now, and it said disparagement. And it just said disparagement. It didn't say anything about trademark or anything. That wasn't involved in anything. Well, okay. Let's say it just pled one cause of action. It didn't say the words. It didn't title it trademark. But remember what they say here, what they alleged here, what Glidewell alleged was the use of confusingly similar trademarks. I guess I'm having trouble how you read all that out and still end up with the complaint we have here. The complaint here was And that surely, under any way you look at it, falls within the definition of the IP exclusion, because it excludes claims based on trademark infringement. Now, if they allege something else about this ad and not allege trademark infringement, then maybe, depending on what they alleged, it could have been. Well, if the ad's just simply disparagement, and we assume that, that it would be disparagement by itself, unrelated to any trademark violence. Well, if it's unrelated to the trade... It could be. I'm saying that... It could be, right. Yeah, the ad... But let's say they took the ad, current ad right now, put it as exhibit one, and said, this constitutes disparagement. Then we'd have no claim that it's within the IP exclusion. But when they allege that the acts that constitute the violation of Gladwell's rights are using confusingly similar trademarks, that must fall within the IP exclusion. Otherwise, we have to ensure anything that comes along. There's no... The IP exclusion ceases to have any meaning or existence if the plaintiff can allege in every cause of action that just to the causes of action is trademark infringement, and we still have to cover it, excuse me, with an IP... We still have to cover it, even though we have an IP exclusion. Exclusion becomes utterly meaningless. People get coverage for something they haven't paid for. So on either ground, I respectfully submit that the plaintiff here simply doesn't have a case, either under SWIFT or under any reading of the rising under, whether it's narrow or broad. We should prevail here. Thank you. Thank you, Kevin. So if I may deal with the issues in reverse order, if Hartford wanted an IP exclusion, excuse me, if Hartford wanted an IP exclusion that would excuse Hartford from defending in all cases of disparagement where intellectual property was also alleged, they could have written it. That's the molecular bioproducts case. In that case, the insurer, I believe it was St. Paul in that case, Hartford and other policies has the same exclusion. They say, we don't provide coverage where IP is also alleged. That's how you do it. That's how you explain it to the policyholder, clear, plain, conspicuous. They didn't do that here. Now this whole issue of whether there's expressed cause of action for disparagement, the Hudson versus colony decision, which is a ninth circuit Supreme court decision. Just on that point. So you're saying if they had said exclusion arising out of any violation of intellectual property rights, period. No, your honor. The molecular bioproducts case also has a separate paragraph. I believe it was travelers in that case might've been St. Paul, where they say, we also do not provide coverage. Okay. Where any violation of intellectual property right is alleged. And they do that because that was my question. That's the language I used arising out of any violation of any intellectual property, period. So that doesn't get you that my point is that doesn't get you there. You need the, you need the additional paragraph that was at issue in molecular bioproducts. We're the, well, let me put the question this way. How does the clause, the exclusion in molecular bioproducts differ from the language in this case? If they had stopped at the period, they put a period after the word rights and excluded the rest of paragraph of a sentence number seven, because it's a molecular bioproducts says that the exclusion applies in any case where IP is alleged. Okay. This, this exclusion only, this, this exclusion we're dealing here with today requires a causal connection. Okay. That the intellectual property violation has to cause the disparagement. Okay. Or vice versa, probably the disparate, let's see, personal advertising injury arising out of intellectual property violations. So personal advertising injury is, you know, when you go through the coverage, that's disparagement. Does the disparagement arise out of intellectual property violations? Okay. The disparagement didn't cause any intellectual private property violation here. There's no allegation. They haven't made the record. Even now they haven't made the record that the disparagement caused the intellectual property violation. Okay. So that, that, that's my point on the exclusion and backing up a step Hudson versus colony. Okay. Carrier didn't want to defend. Colony insurance didn't want to defend the insurance because all the causes of action were for trademark infringement. Okay. But you know what, one of the allegations in there was slogan infringement, steel curtain, you know, from the Pittsburgh Steelers from the 1970s. I don't know if any of you remember them, but it was the defense. Okay. And the carrier didn't want to pay for the defense of that case. They denied the claim. Okay. And the court of appeal, the ninth circuit court of appeal made a big point. You don't have to allege all the elements of a cause of action. All there has to be is the bare potential. Okay. We have more than that here. Okay. We have the ad attached to the complaint and, and, and, and I'm going to ask you one question. You said the record showed there were only two companies in this business. Mr. Hankey said there's nothing in the record that shows that. I did look while we were, and I, I believe there's a site in my brief. I did not find it. I did find in the complaint in paragraph two, where they alleged where Glidewell alleges that Keating is their direct competitor. And they offer essentially the same products and purchasers at the same, at the same marketplace price. And they advise, they go, they're both in dental industry publications and dental industry trade shows. So there may be more than one at the time. Then my, my understanding from the summary judgment papers is that there were, that there were only two. I know that there's a ton now because guess what? Glidewell wasn't able to keep, to clear the market. They were unable to clear Keating out of the market. You know, my guy's a little, little guy, you know, Keating's the giant. Okay. They were Keating, you know, I'm sorry, I said that backwards. Glidewell's the giant. Keating's the little guy. Glidewell was trying to compete to get everybody out of the, of the market. They tried to get Keating out of the market. We were advertising. Okay. They were unsuccessful. Not everybody, right, has these Brucksters. And your honor asked what Bruckster was earlier. Okay. I don't know if you've ever ground your teeth. Okay. But, but Brucks, but Brucks, Bruxing is a dental term for people that grind their teeth. And the implication is, you know, if you've got a Bruckster, that's a crown that it will be sufficient to withstand the grinding of your teeth. Well, if you find anything in the record that shows that they pled that there were the only two companies in the business, please send in a letter within the next, all right, within the next five days, and advise us, just tell us where in the record we should look. Okay. And then if I may have one more point on that, that's the quote that I gave you from, from Swift Distribution. It doesn't, it doesn't require, it doesn't require that there only be two companies in the market. They refer to there being several companies. Okay. I'd just like to know. That's all. Thank you. Thank you, your honor. Case just argued will be submitted. Court will stand in recess today.
judges: Reinhardt, Lucero, Nguyen